Dear Mr. Lawrence:
Reference is made to your request for an Attorney General's opinion regarding the use of the proceeds of a general obligation bond issue approved and dedicated by the voters of the Monroe City School District (the "District") on March 26, 1994, pursuant to a proposition styled Proposition A on the ballot ("Proposition A"). The provisions of Proposition A pertinently provide:
 "Shall the Monroe City Special School District incur debt and issue bonds for the purpose of acquiring and/or improving lands for building sites and playgrounds, including construction of necessary sidewalks and streets adjacent thereto; purchasing, erecting and/or improving school buildings and other school related facilities within and for said school district and acquiring the necessary equipment and furnishing therefore, title to which shall be in the public, and specifically for those school projects set forth in the capital improvement program approved by said school board on January 18, 1994 payable from ad valorem taxes to be levied and collected or caused to levied collected by the City of Monroe " (Emphasis supplied).
As we understand your correspondence, the "capital improvement program" referred to in Proposition A is set forth in the minutes of the District, which provide:
 "It is recommended that the smaller, older elementary schools be consolidated and the facilities closed or converted to other use. This would include:
* * *
 C. Georgia Tucker Elementary School To be closed and students distributed among Lexington, Sallie Humble, and Carver Elementary Schools. Georgia Tucker building to be converted to school administrative office/meeting complex."
Specifically, you ask that this office address the questions set forth below.
 1. "Does the passage of Proposition A in 1994, which incorporates the capital improvements plan outlined at the Monroe City School Board meeting of January 18, 1994 and approved by the Board on that same date, obligate the school district to undertake the conversion of the Georgia Tucker Elementary School facility into a school administrative office/meeting complex, contrary to the Boards' current desire to not use the facility at all and to possibly cause the same to be demolished?"
This office is of the opinion that bond proceeds must be utilized strictly in accordance with the proposition approved by the electorate, and for no other purpose. Attorney General's Opinions Nos. 99-33;92-468. In this regard, we are also guided by the reasoning and authority contained in the previous opinions of this office which determined that ad valorem tax proceeds can only be used in the manner set forth in the proposition approved by the electorate. AttorneyGeneral's Opinions Nos. 00-20; 99-193; 98-369, 98-287, 97-434, 96-494,88-601 and 74-984. We note that LSA- R.S. 39:704 pertinently provides:
 "The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied."
It is with these principles in mind that we address your first question.
In our opinion, although the language of Proposition A requires that the bond proceeds generated thereby be utilized only for the purposes set forth therein, Proposition A does not require that the District use the bond proceeds for all of the purposes set forth therein. In other words, it is our opinion that the language of Proposition A authorizes the School District to use the bond proceeds to fund the projects "set forth in the capital improvement program"; however, Proposition A, in and of itself, does not require the School Board to fund all or any of those projects.
 2. "If it is found that Proposition A does not obligate the Board to convert Georgia Tucker into a school administrative office/meeting complex, is the Board, nevertheless, free to elect not to appropriate any funding for that purpose, as the Proposition and the Board's action of January 18, 1994 do not obligate the Board to appropriate any amount of funding, from the general obligation school bonds or otherwise, for that purpose?"
Respectfully, we must advise that it would be inappropriate for this office to interpret the intent of the School Board and its officials as contained within the capital improvement plan adopted by the School Board at its January 18, 1994 meeting. With respect to interpretation of the capital improvement plan and any obligation the school board may have imposed upon itself in connection with the projects contained within that plan, we must defer to the school board itself, and to its counsel. We note however, that in our opinion, as long as such action would not disturb vested rights or impair contractual obligations, this office is unaware of any provision of state law which would prohibit a school board from taking appropriate action(s) to amend or change adopted plans that are no longer in the best interest of the school district that it serves.
With regard to both of the questions presented in your request, we are compelled to recommend that the School Board consult with bond counsel with respect to whether alienation or use of the Georgia Tucker Elementary School property in a manner other than as set forth in the capital improvement plan adopted by the School Board at its January 18, 1994 meeting, will violate federal tax law or the school district's covenants with respect the issuance of the general obligation bonds authorized by Proposition A.
We trust the foregoing to be helpful. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 BY: ________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/dam